# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| PROGRESSIVE NORTHERN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:19-cv-02684-DCN |
| vs. | ) ) ) | **ORDER** |
| PHILIP CHAMBERS and BARRY FOSTER, | ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on defendant Philip Chambers's ("Chambers") motion to dismiss, ECF No. 8, and defendant Barry Foster's ("Foster") motion to dismiss, ECF No. 11. For the reasons set forth below, the court grants the motions and dismisses the case without prejudice.

## I. BACKGROUND

This declaratory action arises out of a series of events that occurred on November 14, 2018. On that date, Foster "was digging for artifacts in a corn field in Berkeley County, South Carolina." Compl. ¶ 11. At the same time, Chambers was driving his 2007 Ford F-150 along a path adjacent to the corn field and hunting hogs. Chambers saw movement in the corn field and believed that movement to be a wild hog. As such, he allegedly parked his car, exited the vehicle, and fired his rifle at what he believed to be a hog. The "hog" was actually Foster, who sustained a gunshot wound to his right shoulder.

Plaintiff Progressive Northern Insurance Company ("Progressive") issued an automobile insurance policy to Chambers, effective August 7, 2018 to February 7, 2019,

1

that covered the Ford F-150 ("the Policy"). The Policy provides bodily injury liability coverage limits of $50,000 per person and $100,000 per accident and property damage liability coverage with limits of $50,000 per accident. Foster has made a demand for payment to Progressive under the Policy for his injuries inflicted by Chambers. This demand is based on the facts that Chambers allegedly used the door and door jamb of his truck as a rifle rest, that the car was still running and occupied by another passenger, and that Chambers was allegedly still partially in the vehicle when he shot Foster. Notably, Foster has not yet filed a lawsuit against Chambers to recover for his injuries.

Progressive filed the instant suit on September 23, 2019 seeking a declaration that the Policy does not provide coverage for any injuries or damage that Foster sustained, and that Progressive has no duty to defend or indemnify Chambers. Chambers and Foster both filed motions to dismiss the complaint on October 17, 2019 and October 29, 2019, respectively. ECF Nos. 8, 11. Progressive responded to each motion on October 28, 2019 and November 12, 2019, respectively. ECF Nos. 10, 12. Neither defendant filed a reply brief.

## II. STANDARD

A Rule 12(b)(1) motion to dismiss seeks to dismiss a lawsuit for lack of subject-matter jurisdiction. A party may challenge subject-matter jurisdiction in two ways: by arguing that the complaint fails to allege facts upon which subject-matter jurisdiction can be based, or by arguing that the jurisdictional allegations of the complaint are not true. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In the first scenario, the court must accept the allegations in the complaint as true, while in the second scenario, "the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the

disputed jurisdictional facts." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009). "A trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." Adams, 697 F.2d at 1219. The burden of proving subject matter jurisdiction is on the party asserting jurisdiction. Id.

### III. DISCUSSION

This case is before the court on diversity jurisdiction. Chambers's motion to dismiss for lack of subject matter jurisdiction is based on the amount in controversy. Chambers argues that the amount in controversy here is less than $75,000 because the Policy limit for bodily injury coverage is $50,000. Similarly, Foster argues that Progressive's maximum exposure to damages is $50,000, meaning that the amount-in-controversy is not met. Foster also generally argues that the court should decline to exercise its discretionary power to issue a declaratory judgment because the issues here are based in South Carolina law and should be decided by a state court. In response, Progressive contends that the amount in controversy is determined not simply by the Policy limits, which could be the indemnification amount, but also by the cost of defending Chambers in an underlying state court action. In addition, Progressive contends that there could also be a property damage claim, meaning that Progressive's exposure could total $100,000 based on the Policy limits for both bodily injury and property damage.

However, the parties fail to address a crucial issue that necessitates the dismissal of this case—ripeness. The court may consider the issue of ripeness sua sponte. Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003). The doctrine of

3

ripeness exists "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967). It "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 58 (1993). In declaratory judgment actions, a suit is ripe when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). Here, Progressive is asking the court to prematurely declare that it has no obligation to defend or indemnify Chambers before a lawsuit that would require either of those obligations exists, making this case not ripe for adjudication.

### A. Duty to Defend

The issue of whether Progressive owes Chambers a duty to defend is not ripe because Foster has not filed suit against Chambers, meaning Chambers is not in need of a defense. Under South Carolina law, courts determine whether a duty to defend exists based on the allegations in the underlying complaint. USAA Prop. & Cas. Ins. Co. v. Clegg, 377 S.C. 643, 654 (S.C. 2008). Here, there is no underlying complaint for the court to use for its determination because Foster has not filed suit against Chambers. To be sure, South Carolina law also permits the court to determine if a duty to defend exists based on facts outside of a complaint in an underlying action. City of Hartsville v. South Carolina Mun. Ins. & Risk Financing Fund, 677 S.E.2d 574, 578 (S.C. 2009). This could provide a basis for a court to find the issue of duty to defend to be ripe even if an

underlying lawsuit had not yet been filed. For example, in Colony Ins. Co. v. Hucks Pool Co., Inc., the court found that the issue of duty to defend was ripe despite the fact that there was no underlying complaint because the injured party had sent a demand letter to the insured, indicating that a controversy was imminent. 2018 WL 902295, at *3 (D.S.C. Feb. 15, 2018). Here, no such imminence exists to convince the court that this action is ripe. There is some evidence that Foster has contemplated litigation against Chambers. On July 30, 2019, Foster's counsel sent a letter to Progressive demanding payment for his injuries and stating that if Progressive did not agree to payment within 15 days, Foster would initiate litigation against Chambers. ECF No. 8-2. However, that was over five months ago, and Foster has still not initiated litigation against Chambers. This delay indicates that a lawsuit for which Chambers may need defense is not imminent and that there is not "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc., 549 U.S. at 127. Therefore, the issue of duty to defend is not yet ripe.

### B. Duty to Indemnify

The issue of whether Progressive has a duty to indemnify Chambers is similarly not ripe because there is no underlying action from which the duty may arise. The determination of whether a duty to indemnify exists is based on evidence found by the factfinder in the underlying action. Ellett Bros. v. U.S. Fid. & Guar. Co., 275 F.3d 384, 388 (4th Cir. 2001) (citing Jourdan v. Boggs/Vaughn Contracting, Inc., 476 S.E.2d 708, 711 (S.C. 1996)). Therefore, when no findings of fact in an underlying suit exist, the corresponding indemnity claim is not yet ripe. Id.; see also Canopius US Ins., Inc. v. Middleton, 202 F. Supp. 3d 540, 546 (D.S.C. 2016) ("[T]he court may be unable to

5

determine whether the insurer has a duty to indemnify until the resolution of the underlying action."). Again, Foster has not filed suit against Chambers, meaning the issue of whether Progressive owes Chambers a duty to indemnify is not ripe for adjudication.

Because this action is not yet ripe, the court dismisses the case without prejudice. Should Foster file suit against Chambers, Progressive may refile this suit at the appropriate time.

## IV.   CONCLUSION

For the foregoing reasons the court **GRANTS** the motions to dismiss and dismisses the case without prejudice.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 6, 2020**
**Charleston, South Carolina**